**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| WARING LESTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:23-CV-04064-ELR |
| | * | |
| UNITED PARCEL SERVICES, | * | |
| INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

_____

**ORDER**

_____

This case is before the Court on Magistrate Judge Anna W. Howard's Final Report and Recommendation ("R&R"). [Doc. 114]. The R&R recommends that the Court grant the Motion for Summary Judgment by Defendant United Parcel Services, Inc. (UPS). [Doc. 77]. Plaintiff Waring Lester filed timely objections to the R&R. [Doc. 120]. Also before the Court is Lester's Motion for Order to Show Cause Why Defendant Should Not Be Held in Contempt for Violating the Court's April 23, 2025 Order and Motion for *In Camera* Review of Withheld E-Mails. [Doc. 86]. The undersigned addresses each below.

## I.    Summary Judgment Motion

The undersigned first addresses the R&R, which recommends that the Court grant UPS's Motion for Summary Judgment. R&R at 50. The undersigned begins by laying out the applicable legal standards.

### A.    Legal Standards

#### 1.    R&R Review

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). Portions of the R&R to which no objections have been made are reviewed for clear error. Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006); Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006). However, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). A party objecting to an R&R "must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (citation omitted). Moreover, in addressing objections, it is within the district judge's discretion whether to consider an argument that was not presented to the magistrate judge. See Williams v. McNeil, 557 F.3d 1287, 1290–92 (11th Cir. 2009).

2

2.    Summary Judgment

A court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). And a factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. at 248. The court grants a motion for summary judgment only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249–50.

When ruling on the motion, a court views all the evidence in the record in the light most favorable to the non-moving party and resolves all factual disputes in the non-moving party's favor. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, it must establish the lack of evidentiary support for the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324–26. The essential question is "whether the evidence presents

3

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

## B.      Objections on R&R's Exclusion of Evidence

Before laying out the facts of the case for summary judgment, the undersigned first addresses Lester's two objections concerning the R&R's exclusion of certain evidence in opposition to UPS's motion. Specifically, Lester objects to the Magistrate Judge's decision to exclude portions of the Declaration of Jason Gauthier, [Doc. 120 at 17–20], and evidence supporting Lester's theory of a coordinated effort to discriminate and retaliate against him, [id. at 20–23]. As an initial matter, the Magistrate Judge's exclusion of evidence is a "non-dispositive pretrial evidentiary" decision which the district judge "reviews . . . under the clearly erroneous or contrary to law standard." Stewart v. Johnson, No. 18-CV-037, 2021 WL 6752312, at *1 (S.D. Ga. Aug. 10, 2021); see 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); cf. Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1319 (N.D. Ga. 2002) ("A motion in limine is not a dispositive motion."). The undersigned now turns to the merits of the objections.

### 1.      Gauthier Declaration

Lester first objects to the Magistrate Judge's decision to exclude the declaration of Jason Gauthier "to the extent it asserts that [Jeff] Cantrell's

4

investigation notes were falsified" during UPS's investigation into Lester. R&R at 11 (referencing Declaration of Jason Gauthier ("Gauthier Decl.") [Doc. 99-2]). Specifically, Lester contends that the Magistrate Judge's conclusion is incorrect for three reasons: first, UPS disclosed Gauthier as a witness in its initial disclosures as having knowledge regarding his interview, [Doc. 120 at 17–18], second, the excluded portion of Gauthier's declaration is independently supported by deposition testimony from two other UPS employees, [id. at 18], and third, the R&R improperly assumed that the fact that Gauthier was not deposed during discovery prevents him from being used as a witness, [id. at 18–19].

Upon review of the Magistrate Judge's decision, the undersigned finds it is not clearly erroneous. The Federal Rules of Civil Procedure require parties to disclose the names of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). If a party fails to disclose a witness in accordance with Rule 26, the disclosing party "is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(a)(1).

Here, the Magistrate Judge concluded that Lester failed to disclose the subject of the information that Gauthier would provide. Specifically, the Magistrate Judge found that Lester did not reveal to UPS that Gauthier would question the validity of

5

Cantrell's interview notes from UPS's investigation, R&R at 7, and that its supplemental disclosures were untimely and inadequate to put UPS on notice of that subject matter, id. at 7–9. This conclusion is in accordance with Rule 26, which would have required Lester to disclose the subject of Gauthier's testimony to UPS. Based on this conclusion, the Magistrate Judge properly decided to exclude the portion of the Gauthier Declaration regarding the falsification of Cantrell's notes, which is a remedy authorized by Rule 37. Id. at 11.

Lester's arguments do not change this conclusion. First, although UPS did disclose Gauthier as part of its initial disclosures and had notice that he could be a witness regarding UPS's investigation, this does not alter the Magistrate Judge's conclusion that UPS lacked notice specifically that Gauthier would question the validity of Cantrell's investigation notes. R&R at 7–8. Second, deposition testimony regarding the falsification of Cantrell's notes in *other* interviews does not adequately remedy the fact that Lester never disclosed that Gauthier would testify that the notes for *his* interview were also falsified. Third, contrary to Lester's contention, the Magistrate Judge did not assume that UPS's failure to depose Gauthier required his exclusion as a witness; instead, the R&R merely stated that, had UPS been on notice of Gauthier's position in his declaration, it would have deposed him and thus now suffers prejudice by its inability to depose him on that topic after discovery has closed. Id. at 10.

Accordingly, the undersigned overrules Lester's objection to the exclusion of portions of the Gauthier Declaration concerning the falsification of Cantrell's interview notes and does not consider that evidence for summary judgment.

### 2. Disregard of Lester's Evidence as a "New Theory"

Lester lastly argues that the R&R discounts evidence he advanced to support his theory that UPS's investigation into him was pretextual, which the R&R characterized as a "new theory" late disclosed. [Doc. 120 at 20]. Lester maintains that this "sham investigation" theory, as the R&R called it, stemmed from allegations in his Verified Complaint regarding Scott Bremerman's replacement of Lester "with assistance from others," for which Lester developed evidentiary support through discovery on UPS's investigation into him. [Id. at 21]. Therefore, Lester contends, his "sham investigation" theory is properly before the Court on summary judgment as a result of gaining evidence through discovery. [Id.].

After a review of the decision to exclude Lester's new theory for clear error, the undersigned finds none. "Simply put, raising a new legal claim or theory for the first time at the summary judgment stage is improper." Li v. Walsh, No. 16-CV-81871, 2022 WL 892703, at *4 (S.D. Fla. Feb. 18, 2022). Instead, "the proper procedure for plaintiffs to assert a new claim [at the summary judgment stage] is to amend the complaint[.]" Dukes v. Deaton, 852 F.3d 1035, 1046 (11th Cir. 2017) (declining to entertain alternative theory of liability not alleged in the complaint in

response to summary judgment motion). Here, the Magistrate Judge found that the Complaint's allegation that Bremerman was the only person who discriminated against Lester was insufficient to support Lester's argument in his response to the summary judgment motion that there was a coordinated effort by several UPS employees and departments to discriminate and retaliate against him. R&R at 13. Indeed, the Magistrate Judge also noted that Lester confirmed the Complaint's allegation that Bremerman was the sole perpetrator of his termination during Lester's deposition. See R&R at 14. Therefore, the Magistrate Judge concluded that the theory that several UPS officials coordinated a scheme to conduct an investigation leading to his termination is a new one improperly raised for the first time at summary judgment. The undersigned finds this conclusion neither clearly erroneous nor contrary to law.

Accordingly, Lester's objection regarding the Magistrate Judge's exclusion of his new theories is due to be overruled, and the undersigned does not consider Lester's evidence in support of his new theory for summary judgment. The undersigned now lays out the facts of the case relevant for UPS's Summary Judgment Motion.

C.    **Background**[1]

This case arises out of the termination of Lester's 34-year employment with UPS. In October 2021, UPS terminated Lester from his position as a District Manager for the Desert Mountain District. R&R at 18. Lester and UPS dispute the reason for his termination. Lester contends that his termination stemmed from a January 29, 2021, meeting with Scott Bremerman, a UPS West Region Manager and Vice President and Lester's superior, when Lester, a Black man, complained that nothing was ever done about Bremerman's mistreatment of people—particularly UPS's Black managers (the "January 29 Meeting").[2] R&R at 18. Specifically, Lester told Bremerman and UPS's Vice President of Human Resources Jeff Grant at the meeting that they were "going to end up in a courtroom one day because of how [Bremerman] treats people and he conducts himself on these calls." Pl.'s Statement of Additional Material Facts (PSAMF) ¶ 11. About nine months later, on October 18, 2021, Bremerman and Danelle McCusker Rees, Senior Vice President and Global Head of

---

[1] The factual allegations are synthesized from the Background section in the R&R and the Complaint. Lester does not identify any error in the R&R's recitation of the factual allegations other than the omission of certain facts, which the Court includes when it finds the fact is material and supported by the record. Accordingly, the undersigned considers the allegations here in the light most favorable to Lester, the non-movant. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).

[2] Lester later contradicted this allegation during his deposition when he testified that he never referenced race during this meeting with Bremerman. R&R at 18 n. 5.

Talent for UPS, R&R at 25, met with Lester at a coffee shop and informed him that he was being terminated. Id. at 26.

UPS contends that Lester's termination stemmed from an investigation into Lester's conduct and violation of the company's anti-retaliation policy. In 2020, several UPS employees, including one named Jerwin Burke, made multiple complaints through UPS's hotline complaint mechanism against Jason Gauthier, a UPS Operations manager. R&R at 19. Burke, a white man, had been the subject of various investigations regarding performance issues. Id. UPS investigated Gauthier, determined that Burke's complaint against him was substantiated, and demoted Gauthier as a result. Id. Burke took three months of stress leave after his complaint of Gauthier and, upon return to work, was rotated on a series of "special assignments" away from his assigned position in New Mexico. Id. at 20. After several rotations, Burke made another complaint, now against Lester, claiming that Lester and Gauthier retaliated against him for his previous hotline complaint against Gauthier. Id.

UPS initiated an investigation into Burke's complaint against Lester, which involved the investigation of several other UPS employees, including some higher-level personnel. R&R at 20–21. During the investigation, multiple UPS employees reported that Lester and Gauthier had a close relationship, that Gauthier told people that he reported to Lester, and that there was "an atmosphere of fear" in Lester's district. Id. at 21–22. At least one employee told investigators that they understood

10

Lester to be rotating Burke to various districts to force Burke to retire. Id. at 22. During UPS's interview with Gauthier, he admitted he told several staff managers that Burke could not be trusted on account of his hotline complaint and that Burke and another person were the reason Gauthier got demoted. Id. at 23. UPS ultimately found Gauthier not credible and felt that he "was protecting" Lester. Id. UPS also interviewed Lester, who characterized Burke as a poor performer and claimed that Burke was needed to help lower-performing UPS facilities. Id. The investigators, however, found Lester's responses uncredible and at times contradictory. Id. During the investigation, UPS also received other hotline concerns from employees regarding Lester and Gauthier. Id. at 24.

UPS ultimately concluded from its investigation that Lester and Gauthier retaliated against Burke for calling in a hotline concern that resulted in Gauthier's demotion. Jeff Cantrell, one of the UPS employees that conducted the investigation, R&R at 21, sent his recommendation that Lester be terminated to the UPS Concerns Committee, a committee that investigates complaints against high-level employees. Id. at 25. McCusker Rees notified Grant and Bremerman that the Concerns Committee had determined that Lester should be terminated, which was the first time Bremerman learned of the investigation into Lester. Id. Bremerman and McCusker Rees then arranged the meeting with Lester at the coffee shop on October 18, where they informed him of his termination. Id. at 26.

Following his termination, Lester filed a charge against UPS with the Equal Employment Opportunity Commission (EEOC) alleging Title VII discrimination and retaliation. R&R at 26. In the charge, Lester claimed that UPS fired him "through Mr. Bremerman" and that UPS violated Title VII when it terminated his employment to replace him with a less qualified white employee. Id. at 26. The EEOC found that Lester's charge was unsubstantiated and made no reference to any claim beyond discrimination and retaliation.

Based on these facts, the Magistrate Judge recommends that the undersigned grant summary judgment to UPS. R&R at 50. Regarding Lester's retaliation claim, the R&R concluded that while Lester had established a prima facie case of retaliation under the McDonnell Douglas framework, id. at 30–31, UPS had successfully provided a legitimate nondiscriminatory reason for his firing, id. at 32, and Lester failed to establish a convincing mosaic of evidence to allow a jury to infer UPS retaliated against Lester, id. at 32–41 (analyzing categories of evidence that could support a convincing mosaic). Regarding his discrimination claim, the R&R concluded that Lester failed to make a prima facie case because he failed to identify a similarly situated employee outside his classification treated differently, id. at 43–44, and that, for largely the same reasons as for retaliation, Lester failed to establish a convincing mosaic of evidence, id. at 45–47. Finally, the Magistrate Judge found

12

that Lester had abandoned his breach of contract claim by not addressing it in his response brief. Id. at 49.

**C.     Discussion**

Lester objects to the R&R's recommendation on summary judgment on two grounds.[3] As an initial matter, Lester does not object to the R&R's recommendation that the undersigned grant summary judgment in favor of UPS on his breach of contract claim. Therefore, the undersigned has reviewed that conclusion for clear error, finds none, and grants summary judgment in favor of UPS on the breach of contract claim. See Macort, 208 F. App'x at 784. The Court now turns to Lester's objections regarding the retaliation and discrimination claims.

1.     Misapplication of Summary Judgment Standard

First, Lester contends that the Magistrate Judge granted summary judgment by impermissibly weighing evidence and resolving credibility disputes. [Doc. 120 at 1–2]. According to Lester, the R&R misapplied the relevant summary judgment standard by crediting UPS's evidence and rejecting contrary inferences regarding the temporal proximity of Lester's termination, UPS's treatment of similarly situated

---

[3] After being granted an extension, Lester filed his objections contemporaneously with a Motion for Leave to File Excess Pages, [Doc. 119], requesting an eight-page extension to the normal 15-page limitation on objections to an R&R set by the undersigned's Case Instructions. While those instructions also require such motions to extend page limits be filed at least five days ahead of the filing deadline, the undersigned nonetheless finds it proper to grant the motion and allow the eight-page extension given the length of the R&R. However, the undersigned declines to consider the three-page table Lester attaches to his objections, as the table was not included in the requested page extension. [See Doc. 120-1].

comparators, UPS's procedural irregularities and policy violations, and irregularities and fabricated evidence in UPS's investigation into Lester.[4] [Id. at 4–7]. Upon review, the undersigned finds that the Magistrate Judge properly applied the summary judgment standard in evaluating the evidence before it.

Regarding temporal proximity, Lester argues that the Magistrate Judge improperly concluded that the nine intervening months between Lester's protected activity (i.e., the January 29 Meeting) and his termination was too long to support a finding of retaliation. [Doc. 120 at 5]. Lester contends that the R&R improperly viewed this timeline in isolation and that the question of whether nine months "permits a retaliatory inference is a jury question." [Id. at 5]. This objection is misguided. The Magistrate Judge analyzed the temporal proximity between the retaliatory conduct and Lester's firing as only one potential piece of evidence that could support a convincing mosaic to defeat summary judgment. See Lewis v. City of Union City, 934 F.3d 1169, 1185 (11th Cir. 2019) ("A convincing mosaic may be shown by evidence that demonstrates, among other things, (1) suspicious timing . . . ."). Therefore, while Lester is correct that the Court should not look solely to temporal proximity to determine whether the evidence supports an inference of retaliation, the R&R here properly concluded that the timing alone was insufficient

---

[4] This last point regarding the credibility of UPS's investigation relies on his new "sham investigation" theory, which the Court has already excluded, so the undersigned does not address it.

to make such a showing and thus continued to look to the remaining evidence. See R&R at 35 n.35 (noting that the Lewis factors are neither collectively nor alone necessary for a finding that a convincing mosaic of retaliation or discrimination exists to defeat summary judgment).

Next, Lester maintains that the R&R improperly concluded that he had not put forth similarly situated white comparators that UPS treated differently. [Doc. 120 at 5–6]. Lester suggests that, as he pointed out in his response to the summary judgment motion, he provided evidence of three white managers informed of allegations against them, while Lester was not informed of any allegations, and of a retired white manager who was interviewed by UPS, while a retired Black manager was not interviewed.[5] [Id.]. These objections are also unfounded. The R&R considered and discredited Lester's argument that he was not afforded notice of the allegations like the white managers because UPS interviewed Lester as part of the investigation. R&R at 37. Additionally, even taking the facts most favorable to Lester, the other white managers interviewed could not have been similarly situated to him because he, not the other white managers, was the focal point of Burke's complaint that initiated UPS's investigation. R&R at 38. Finally, the fact that UPS decided to interview a white retired manager and not interview a Black retired manager is not relevant to the

---

[5] While Lester also suggests that deposition testimony from a UPS HR representative stating that it would be "very odd" not to inform an employee of the reason for termination, [Doc. 120 at 6], this argument fails to point to a specific comparator and thus does not support this objection.

presence of any comparator similarly situated to Lester who was treated better than he.

Lester also argues that the R&R failed to apply the proper summary judgment standard by ignoring Lester's evidence concerning UPS's procedural irregularities and policy violations. Specifically, Lester points to several ways in which UPS failed to follow its own procedure during its investigation into Lester and his termination, including the submission of an "anonymous concern" targeting Lester, failure to provide Lester with notice of allegations against him, absence of progressive discipline, and termination without explanation after 34 years of service. [Doc. 120 at 6–7]. However, the R&R properly addressed and discredited all these alleged procedural irregularities suggested by Plaintiff. First, the R&R correctly reviewed UPS policies and accurately concluded that there was no UPS policy prohibiting the submission of anonymous concerns. R&R at 36. Second, Lester fails to point to any specific UPS policy that requires notice of an alleged violation prior to termination outside of deposition testimony from a UPS HR representative stating that it would be "very odd" for an employee to not know the reason for termination. [Doc. 99 ¶¶ 23–24]. But even drawing an inference from this testimony that UPS had such a policy, Lester does not explain why UPS's interview of Lester would not suffice to satisfy such a notice requirement. R&R at 37. Contrary to Lester's argument, these conclusions are not an "implicit[] weigh[ing of] competing interpretations of the

16

evidence" as the evidence directly contradicts Lester's arguments concerning UPS policy.

Finally, Lester argues that the R&R "ignored, mischaracterized, or treated as immaterial" several facts that are central to his retaliation and discrimination claims. [Doc. 120 at 7–8 (listing six facts)]. However, three of these facts are repeated from Lester's previous arguments in this section of his objections, specifically regarding the "anonymous" concern, the timeline of events, and comparator evidence. [Id. at 8]. And the R&R properly considered the other three when making its determination that Lester failed to put forth sufficient evidence to present a convincing mosaic demonstrating retaliation or discrimination. Two of these facts concern UPS's stated rationale for Lester's termination and Bremerman's failure to inform Lester of that rationale at his termination. [Id. at 8]. However, Bremerman told Lester that he was being terminated for violation of UPS's non-retaliation policy at their October 18 meeting. PSAMF ¶ 19. Simply failing to elaborate on that rationale is not probative of his involvement in a "sham investigation" against Lester and thus does not aid him in creating a convincing mosaic. [See R&R at 39 n.37]. Regarding the last allegedly ignored fact—the substance of Lester's January complaint—the R&R properly considered that complaint in the light most favorable to Lester regarding it as a protected activity, despite Lester's own deposition testimony undermining the suggestion that he brought up race during this conversation. R&R at 31.

Accordingly, the undersigned overrules Lester's objection that the R&R misapplied the legal standard for summary judgment.

### 2. Misapplication of Eleventh Circuit Retaliation Standard

Lester next objects to the Magistrate Judge's application of Eleventh Circuit precedent on retaliation claims under Ismael v. Roundtree, 161 F.4th 752 (11th Cir. 2025), and Berry v. Crestwood Healthcare, LP, 84 F.4th 1300 (11th Cir. 2023). [Doc. 120 at 10].

First, Lester contends that the R&R improperly focused its analysis on whether he had disproved UPS's explanation for Lester's firing and whether Bremerman was the sole decisionmaker in his termination. [Doc. 120 at 11–12]. Instead, Lester maintains, Ismael requires the Court to evaluate "whether the totality of the circumstantial evidence permits a reasonable jury inference of retaliatory intent" and "whether retaliatory intent influenced the adverse action." [Id. at 11–12]. While the undersigned agrees with Lester that the question at summary judgment is broader than simply looking at pretext or the decisionmaker, the Magistrate Judge here looked well beyond those two narrow questions in coming to her conclusion. Indeed, the R&R analyzed "whether there is [a] sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated [or retaliated] against the plaintiff." R&R at 33 (quoting Ismael, 161 F.4th at 762). In doing so, the R&R evaluated the totality of the evidence by going through several factors from Lewis v. City of Union

18

City, 934 F.3d 1169 (11th Cir. 2019), that the Eleventh Circuit has said could establish a convincing mosaic of retaliation. R&R at 33. Thus, the R&R not only concluded that Lester had not put forth enough evidence to demonstrate that UPS's investigation was a pretext, id. at 35–37 but also evaluated Lester's other evidence on similarly situated employees, id. at 34–35, timing between protected conduct and termination, id. at 33–34, and patterns of discrimination, id. at 41, to ultimately conclude that there was not a sufficient evidentiary basis for a jury finding of intentional discrimination or retaliation.[6] And, upon review of the totality of the evidence, the undersigned agrees with the Magistrate Judge's conclusion.

Second, Lester suggests that the R&R improperly applied the Eleventh Circuit's standard for summary judgment on retaliation claims set out in Berry: "To survive summary judgment, the employee must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful retaliation against the employee." Berry, 84 F.4th at 1311. Additionally, according to Lester, the R&R improperly addressed each of the three nonexclusive categories of circumstantial retaliation evidence to determine whether he had met this standard in isolation rather than evaluating them cumulatively. [Doc. 120 at 12].

---

[6] Although the sections of the R&R cited here are to its discussion regarding retaliation, the reasoning also applies to the discrimination claim because of the overlapping nature of the analyses. See R&R at 47 (discussing Lester's discrimination claim by "point[ing] to its earlier discussion in the retaliation section")

The undersigned agrees with the R&R's application of Berry. While Lester is correct in his articulation of the Berry standard as stated above, an employer's "abundant and uncontroverted independent evidence that no retaliation occurred" will warrant summary judgment in favor of the employer. Berry, 84 F.4th at 1311 (internal quotation marks omitted). Here, the R&R found that Lester's evidence did not constitute a convincing mosaic sufficient to overcome UPS's evidence that no retaliation occurred, i.e. UPS's investigation of Lester and the ultimate recommendation of the Concerns Committee that he be terminated. R&R at 32–41. The undersigned agrees with this conclusion. The only evidence Lester points to undermining UPS's evidence of non-retaliation is that the investigation into him was a "sham" orchestrated by Bremerman, which, as discussed above, the Magistrate Judge properly excluded.

Nevertheless, even considering the sham investigation evidence, the R&R's conclusion is still proper. Despite Lester's contention, the Magistrate Judge did not analyze the three nonexclusive Berry factors in isolation. Instead, the Magistrate Judge found that suspicious timing or ambiguous statements, similarly situated comparators, and evidence of pretext all cut against Lester. R&R at 33–36. Indeed, this analysis, with which the undersigned agrees, reflects the analysis done in Berry, in which the Eleventh Circuit went through each of the three factors to determine that none cut in the employee's favor and thus conclude that her circumstantial evidence

20

was not sufficient to create a reasonable inference of intentional retaliation. <u>Berry</u>, 84 F.4th at 1312–13.

Accordingly, Lester's second objection regarding the application of the proper standard for retaliation claims is due to be overruled, and, thus, the undersigned adopts the R&R as the order of this Court.

## II.    Motion for Contempt

The Court next addresses Lester's request that this Court hold UPS in contempt for failure to produce two emails in discovery, or, alternatively, compel UPS to submit them to the Court for *in camera* review. [Doc. 86]. Specifically, Lester argues that UPS was obligated to provide him with the two emails pursuant to this Court's April 23, 2025, Order ("April 23 Order"). [Doc. 72]. The undersigned entered the April 23 Order overruling Lester's objections to Magistrate Judge J. Clay Fuller's[7] Order granting in part and denying in part Lester's motion to compel. [Doc. 59]. Lester identifies two emails at issue in his instant motion that he contends should have been disclosed in response to the April 23 Order: one from UPS's in-house counsel to McCusker Rees on October 8, 2021, and one from McCusker Rees to Bremerman on October 18, 2021 (collectively, the "McCusker emails"). [Docs. 86 at 1–2; 86-5 at 3 (UPS's privilege log identifying the McCusker emails)]. Lester

---

[7] This case was originally assigned to Magistrate Judge Fuller and was reassigned to Magistrate Judge Howard on April 1, 2025.

21

contends that the April 23 Order required UPS to provide the McCusker emails based on the undersigned's instruction to UPS "to produce any nonprivileged communications between Bremerman and McCusker that concern the plans about when, where, and how [UPS] was going to terminate [Lester's] employment." [Doc. 72 at 11–12].

Neither contempt nor *in camera* review are warranted here. "Courts have inherent power to enforce compliance with their lawful orders through civil contempt." Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991). A finding of civil contempt must be supported by "clear and convincing evidence" that: (1) the "allegedly violated order was valid and lawful," (2) "the order was clear and unambiguous," (3) "the alleged violator had the ability to comply with the order," and (4) the order was violated. F.T.C. v. Leshin, 618 F.3d 1221, 1232 (11th Cir. 2010).

Here, Lester cannot demonstrate that UPS violated this Court's April 23 Order. First, regarding the October 18 McCusker email, the Court already ruled that it has been properly withheld. Judge Fuller's October 3, 2024 Order expressly denied Lester's motion to compel regarding that email. [Doc. 59 at 19–20]. Although Lester objected to the Magistrate Judge's Order, [see Doc. 63], the undersigned overruled the objections and reopened discovery for the limited purpose of requiring UPS to produce documents in accordance with the Magistrate Judge's Order. [Doc. 72 at

22

11–12]. Therefore, because nothing in the April 23 Order suggested that the undersigned altered the Magistrate Judge's conclusion regarding the October 18 McCusker Email, the April 23 Order did not require its disclosure. Accordingly, its nondisclosure did not violate the April 23 Order.

Second, failure to disclose the October 8 McCusker email also did not violate this Court's April 23 Order. Specifically, the April 23 Order required disclosure of certain "nonprivileged communications between [Bremerman] and McCusker" and "any nonprivileged communications sent to or from" Bremerman. [Doc. 72 at 11–12]. However, the October 8 McCusker Email—sent by UPS in-house counsel to McCusker—falls into neither of these two categories. Therefore, because the October 8 McCusker Email is not covered by the April 23 Order, its nondisclosure is not violative of that Order.

Finally, the undersigned finds that *in camera* review of the McCusker Emails is not warranted here. A district court may conduct an *in camera* review of evidence withheld as privileged upon a "showing of a factual basis adequate to support a good faith belief by a reasonable person" that the evidence is not privileged. United States v. Zolin, 491 U.S. 554, 572 (1989). Upon such a showing, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." Id.; see MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 627 (S.D. Fla. 2013) ("The Court does not conduct an *in camera* review lightly, nor simply because

a party requests it, but rather this Court holds the proponent of non-disclosure to the appropriate evidentiary burden.").

Lester has not met his burden to demonstrate that *in camera* review is appropriate here. The Court already determined that UPS's justification for the October 18 McCusker Emails being privileged—that its contents and attachment were prepared by in-house counsel and relate to legal advice—was sufficient. [Doc. 59 at 17, 19–20]. And Lester has failed to provide sufficient justification to demonstrate that the October 8 McCusker Email—sent *directly from UPS in-house counsel* to McCusker—is not privileged.

Accordingly, the Court finds that UPS is not in contempt of the April 23 Order and declines to conduct *in camera* review of the McCusker Emails.[8]

## III.    Conclusion

In sum, the undersigned **GRANTS** Lester's Motion for Leave to File Excess Pages for Objections. [Doc. 119]. Furthermore, the undersigned **OVERRULES** Lester's objections to the R&R, [Doc. 120], **ADOPTS** the R&R, [Doc. 114], as the order of the Court, and, for the reasons stated in the R&R, **GRANTS** UPS's Motion for Summary Judgment, [Doc. 77]. Additionally, the Court **DENIES** Lester's Motion

---

[8] To the extent UPS requests attorneys' fees under Rule 37 in its response to Lester's motion, [Doc. 93 at 13–14], the Court denies the request as Rule 37 allows for attorneys' fees related to a discovery motion to compel, not a motion for contempt or *in camera* review. See Fed. R. Civ. P. 37(a)(5)(B).

for Order to Show Cause Why Defendant Should Not Be Held in Contempt for Violating the Court's April 23, 2025 Order and Motion for *In Camera* Review of Withheld E-Mails. [Doc. 86]. The undersigned **DIRECTS** the Clerk to enter judgment in favor of UPS and **TERMINATE** this case.

      **SO ORDERED**, this 31st day of March, 2026.

Eleanor L. Ross
Eleanor L. Ross
United States District Judge
Northern District of Georgia

25