IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WARING LESTER,

        Plaintiff,

v.

UNITED PARCEL SERVICES, INC.,

        Defendant.

Case No. 1:23-cv-04064-ELR

## PLAINTIFF'S REPLY IN SUPPORT OF RULE 59(e) AND RULE 60(b) MOTION FOR RECONSIDERATION

Plaintiff Waring Lester respectfully submits this Reply in support of his Rule 59(e) and Rule 60(b) Motion for Reconsideration.

UPS's response confirms the precise "error of apprehension" warranting reconsideration. The Court did not merely reject Plaintiff's argument; it misapprehended both the pleadings and the discovery record. From the inception of this case, Plaintiff alleged that UPS's "purported internal investigation concerning Jerwin Burke was pretext and a sham for racial discrimination against Mr. Lester." (Doc. 1 ¶ 79). UPS itself then made the investigation the central factual issue in discovery, identifying two dozen (24) individuals involved in the investigation and termination decision, producing investigative materials, and defending the integrity of the investigation throughout discovery and summary judgment briefing. Plaintiff's summary judgment evidence concerning coordinated investigative

1

conduct, fabricated witness narratives, and inconsistencies in the investigative process therefore did not introduce a "new theory" or "new claim." It was the natural evidentiary development of the very issue framed by the Complaint and explored extensively by both parties during discovery. UPS cannot plausibly claim surprise regarding factual development directed at the precise investigation UPS itself placed at the center of the case.

## I.    UPS'S RESPONSE CONFIRMS THAT THE COURT MISAPPREHENDED THE RECORD

UPS argues that reconsideration is improper because Plaintiff merely "repackages" prior arguments. (Resp. at 2). But UPS itself quotes the governing standard that reconsideration is appropriate where the Court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." (*id.*).

That is precisely what occurred here.

The Court excluded Plaintiff's "sham investigation" evidence on the premise that Plaintiff advanced a new theory at summary judgment. But the Complaint expressly alleged that UPS's "purported internal investigation concerning Jerwin Burke was pretext and a sham for racial discrimination against Mr. Lester."

UPS's response does not and cannot dispute that this allegation appears expressly in the Complaint. Instead, UPS attempts to recast Plaintiff's evidentiary

development during discovery as a "fundamental change in the nature" of the case. That characterization is unsupported by the pleadings, discovery record, or governing law.

Plaintiff did not assert a new "basis for entitlement" at summary judgment. The basis for liability remained unchanged: UPS terminated Plaintiff through a discriminatory and retaliatory investigation that was "pretext and a sham." Discovery merely revealed the scope of the participants and the mechanics by which the sham investigation was carried out.

UPS's own interrogatory responses confirm that the investigation involved numerous UPS personnel. UPS identified 24 individuals "involved in the investigation into Lester's retaliation against Burke." (See **Exhibit 1** hereto, *Defendant UPS's Objections and Answers to Plaintiff's First Set of Interrogatories* at Response No. 13 (Feb. 12, 2024), also at Doc. 78-9).

Moreover, UPS expressly stated that:

- Jeff Cantrell and Eric Mauro "principally conducted the investigation"; and

- Peter Menosky and Erica Chisolm provided "initial assistance".

(*Id.* at No. 5).

Plaintiff then conducted discovery accordingly, including deposing Jeff Cantrell and Peter Menosky—even though Mr. Lester had never met or was familiar with them. (See Plaintiff's Statement of Additional Material Facts ¶¶ 84-87 (Doc.

3

99)). Indeed, Plaintiff noticed and took virtually all depositions in this case, deposing 7 out of the first 11, of the 24 individuals listed by UPS as "involved in the investigation into Lester's retaliation against Burke."  (See **Exhibit 2** hereto, Declaration of Vernon M. Strickland ¶¶ 2-3 (May 4, 2026), also at Doc. 128-1).

UPS's assertion that the sham investigation theory "was not advanced or disclosed in discovery," (Resp. at 5), is therefore completely contrary the discovery record.

Nor does UPS identify any interrogatory response, deposition testimony, or discovery admission where Plaintiff disclaimed the theory that the investigation was fabricated, manipulated, or coordinated. UPS instead relies entirely on attorney argument.

## II.    UPS IMPROPERLY CONFUSES DISCOVERY EVIDENCE WITH A "NEW CLAIM"

UPS's response improperly collapses the distinction between:

(1) a new claim or basis for liability; and

(2) evidence developed during discovery supporting an existing pleaded theory.

That distinction is dispositive.

Plaintiff's Complaint expressly alleged that "the **purported internal investigation** concerning Jerwin Burke was pretext and **a sham** for racial discrimination against Mr. Lester." (Doc. 1 at ¶ 79) (emphasis added).  Once that allegation was pleaded, Plaintiff was entitled to develop evidence through discovery

demonstrating how the investigation was allegedly manipulated, coordinated, or fabricated.

That is not a new claim.  It is proof.  UPS's authorities do not hold otherwise.

Unlike the plaintiffs in *Sorenson v. Delta Air Lines, Inc.*, --- F.4th ----, 2026 WL 1090720, at *3 (11th Cir. Apr. 22, 2026), (discussed at Resp. at 4-5), Plaintiff here did not assert a new statutory entitlement or entirely different basis for liability after discovery closed.  Rather, Plaintiff supported an expressly pleaded allegation with evidence obtained during discovery.

Similarly, UPS's reliance on *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004), (Resp. at 5), only underscores why reconsideration is warranted here.

*Gilmour* involved an entirely different circumstance: the plaintiff attempted to assert a wholly new contract-based cause of action in response to summary judgment after previously pleading only tort claims. The Eleventh Circuit held that a plaintiff may not use summary judgment briefing to assert a new legal claim requiring a different theory of liability and different elements of proof.  *Id.* at 1315.

That is not remotely what occurred here.

Plaintiff did not introduce a new statutory claim, new cause of action, or new

basis for liability.[1]  Plaintiff's claims remained discrimination and retaliation claims from the inception of the case through summary judgment. The alleged "sham investigation" was expressly pleaded in the Complaint itself, which alleged that UPS's "purported internal investigation concerning Jerwin Burke was pretext and a sham for racial discrimination against Mr. Lester."

Unlike *Gilmour*, Plaintiff did not pivot from one legal theory to another after discovery closed. There was no attempt to transform a tort case into a contract case, no invocation of a new body of law, and no assertion of a new "basis for entitlement." Instead, Plaintiff merely relied upon evidence developed during discovery to substantiate an already pleaded allegation concerning pretext and discriminatory motive.

Indeed, *Gilmour* actually reinforces Plaintiff's position because the Eleventh Circuit expressly distinguished between: (1) impermissibly asserting a new claim at summary judgment; and (2) using discovery and summary judgment practice "to

---

[1] Indeed, UPS's reliance on *Gilmour* highlights the flaw in its position.  *Gilmour* requires amendment where a plaintiff attempts to introduce an entirely new claim or legal basis for liability at summary judgment. 382 F.3d at 1315.  But here, Plaintiff's Complaint already alleged that UPS's "purported internal investigation concerning Jerwin Burke was pretext and a sham for racial discrimination against Mr. Lester." (Doc. 1 ¶ 79).  Thus, if Plaintiff supposedly was required to amend the Complaint before relying on discovery evidence supporting that allegation, it is unclear what amendment UPS contends Plaintiff should or could have made.  The nature of the claim did not change; discovery merely supplied additional evidentiary support for an already pleaded allegation.

define disputed facts and issues." *Id.* at 1314.  That distinction is dispositive here.

Plaintiff's evidence regarding fabricated witness statements, coordinated investigative conduct, and inconsistencies in UPS's investigation did not alter the nature of the claims. It merely defined the factual issues supporting Plaintiff's already pleaded allegation that the investigation itself was a sham.

Moreover, UPS's discussion of *Gilmour* omits that Court's equally important recognition that discovery and summary judgment practice serve to define disputed factual issues.  (Resp. at 5).  *Gilmour* explains that Rule 8's notice pleading framework "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues." 382 F.3d at 1314.  That is precisely what occurred here. Discovery revealed evidence supporting Plaintiff's pleaded sham-investigation allegations, including evidence concerning the scope of the participants and the manner in which the investigation was conducted.

UPS's position would improperly convert *Gilmour* into a rule requiring plaintiffs to plead all evidentiary particulars before discovery occurs—which is impossible without discovery in most cases.  But *Gilmour* says no such thing. To the contrary, the decision merely prohibits a plaintiff from asserting an entirely new legal claim after discovery has closed.

Here, the nature of the claim **never changed**.

Indeed, UPS's position would invert the structure of federal litigation by

requiring plaintiffs to plead evidentiary detail before discovery occurs. Rule 8 imposes no such requirement.  Federal pleading standards expressly contemplate that discovery and summary judgment practice will define disputed factual issues and evidentiary support.

That is precisely what occurred here.

Plaintiff does not seek special treatment or relaxation of the Federal Rules. Plaintiff seeks only the ordinary application of Rules 8, 26, 37, and 56 as consistently applied in federal practice.  Those rules expressly contemplate that discovery will refine factual disputes and evidentiary support for pleaded claims. Excluding evidence supporting an expressly pleaded allegation because discovery later revealed additional supporting details improperly elevates pleading requirements beyond Rule 8 and improperly narrows the ordinary scope of summary judgment evidence under Rule 56.

## III.   UPS'S ARGUMENT REGARDING GAUTHIER MISSTATES RULE 37(c)

UPS next argues that Plaintiff failed to disclose information concerning Jason Gauthier and therefore his declaration was properly excluded under Rule 37(c). That argument misstates both the facts and the law.

As explained in Plaintiff's motion, there was no failure to disclose within the meaning of Rule 26(a) or Rule 26(e).  UPS itself identified Jason Gauthier as a witness with relevant knowledge. UPS also interviewed Gauthier during its

investigation and possessed the underlying information during discovery.

UPS's argument improperly transforms Rule 37(c) into a rule requiring a party to depose every witness identified by the opposing party or forever lose the ability to rely on that witness's testimony.  That is not the law.

To be sure, as an illustration, had UPS submitted a declaration from Gauthier supporting UPS's position, Plaintiff plainly could not have moved to strike the declaration merely because Plaintiff elected not to depose him.  The same principle applies here with even greater force because UPS—not Plaintiff—identified Gauthier as a witness with relevant knowledge and interviewed him during the investigation.

UPS therefore cannot establish prejudice.  Indeed, UPS possessed superior access to Gauthier and his information throughout discovery.

## IV.    *EDWARDS v. NATIONAL VISION* IS DISTINGUISHABLE AND ACTUALLY SUPPORTS PLAINTIFF

UPS's reliance on *Edwards v. National Vision, Inc*., 946 F.Supp. 2d 1153 (N.D. Ala 2013), is misplaced.  *Edwards* involved precisely the type of concealment that is **absent here**.

There, the plaintiff obtained a signed witness declaration during discovery, failed to produce it in response to document requests specifically seeking witness statements, failed to supplement Rule 26 disclosures, denied possessing witness statements during sworn deposition testimony, and then revealed the declaration for

the first time in opposition to summary judgment after discovery closed. *Id.* at 1158-59.

The *Edwards* court repeatedly emphasized "knowing concealment" and the resulting prejudice to the opposing party.  *Id.* at 1160.

No comparable facts exist here.  Plaintiff did not conceal Jason Gauthier's existence.  UPS itself disclosed him as a witness.  Plaintiff did not conceal the subject matter of Gauthier's knowledge.  UPS interviewed him during the investigation.  Nor did Plaintiff falsely deny possessing witness statements in written discovery or sworn testimony.

Most importantly, the prejudice identified in *Edwards* is entirely absent here because UPS already possessed superior access to both the witness and the underlying information. UPS cannot plausibly claim unfair surprise regarding statements from a witness it identified and interviewed itself during the discovery period.

Thus, *Edwards* underscores why exclusion was improper here.

## V.    RECONSIDERATION IS NECESSARY TO PREVENT MANIFEST INJUSTICE

Particularly in employment discrimination cases involving motive, credibility, and pretext, courts must exercise caution before excluding evidence that bears directly on the integrity of the employer's stated investigative process. Questions concerning witness credibility, investigative irregularities, shifting

explanations, and the good faith of an employer's investigation are classic jury issues under Rule 56.

Here, the excluded evidence goes directly to pretext, credibility, and the integrity of UPS's investigation process itself.  Those are quintessential jury questions.

By excluding evidence supporting Plaintiff's expressly pleaded sham investigation allegations—and excluding testimony from a witness UPS itself identified and interviewed—the Court materially altered the summary judgment record on pretext.

At bottom, UPS seeks to recast ordinary factual development through discovery as an improper "new theory" while simultaneously using Rule 37(c) to exclude testimony from a witness UPS itself identified and interviewed.

Federal pleading and discovery rules do not require a plaintiff to plead evidentiary detail before discovery or to depose every witness disclosed by the opposing party to preserve the right to rely on that witness's testimony.

Because the Court's ruling rested on a misapprehension of both the pleadings and the discovery record, reconsideration is warranted under Rules 59(e) and 60(b).

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Reconsideration and for such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of May, 2026.

**STRICKLAND DEBROW LLP**


*Vernon M. Strickland*
Vernon M. Strickland
Georgia Bar No. 345346
Kimberly Bourroughs Debrow
Georgia Bar No. 231480
Joy D. Bonner
Georgia Bar No. 43979
246 Bullsboro Drive, Suite A
Newnan, Georgia 30263
Tel: (470) 683-4402
Fax: (470) 683-4412
vstrickland@stricklanddebrow.com
kbdebrow@stricklanddebrow.com
jbonner@stricklanddebrow.com

*Counsel for Plaintiff Waring Lester*

12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

WARING LESTER,

      Plaintiff,

v.

UNITED PARCEL SERVICES, INC.,

      Defendant.

Case No. 1:23-cv-04064-ELR

## CERTIFICATE OF RULE 7.1 COMPLIANCE
## AND CERTIFICATE OF SERVICE

I hereby certify that this document has been prepared with Times New Roman 14-point font in accordance with Local Rule 5.1.C.  I also certify that on April 22, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

This 20th day of May, 2026.

/s/ *Vernon M. Strickland*
Vernon M. Strickland
Georgia Bar No. 345346